UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DEVIN FLOYD,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>24 HOUR FITNESS USA, LLC,<br><br>　　　　　Defendant. | Case No.  23-cv-00871-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 66 |

　　　　Plaintiff Michael Devin Floyd, proceeding pro se, has filed suit against Defendant 24 Hour Fitness USA, LLC ("24HF").  Mr. Floyd alleges that 24HF violated his rights by, *inter alia*, having him removed from a gym on two different occasions and then terminating his gym membership.  Now pending before the Court is 24HF's motion to dismiss the operative pleading which is the first amended complaint ("FAC").  Having considered the parties' briefs as well as their oral argument at the hearing held on January 9, 2025, the Court hereby **GRANTS** in part and **DENIES** in part the motion to dismiss.

<h2 style="text-align:center">I.　　<u>FACTUAL & PROCEDURAL BACKGROUND</u></h2>

　　　　In the FAC, Mr. Floyd alleges as follows.

　　　　Mr. Floyd has been a member of 24HF since January 2022.  *See* FAC, Ex. 1 (page 1).  In July 2022 and then in October 2022, there were two incidents in which Mr. Floyd was asked to leave while he was working out at a 24HF gym in Hayward, California.

　　　　**July 2022.**  According to Mr. Floyd, in July 2022, he was working out in the gym when two men approached him.  Mr. Floyd had never seen the men before even though he had been using the gym frequently.  The men claimed to be 24HF employees.  One had a manager tag on.

1    The men informed Mr. Floyd that he had previously been banned from the gym based on multiple

2    complaints.  When Mr. Floyd asked who complained and what the complaints were about, the

3    men refused to give him any information.  *See* FAC, Ex. 2 (page 1).

4          Mr. Floyd told the men that he would not leave because they had not given him an

5    "explanation about why [he] was being kicked out of the gym.  They informed [Mr. Floyd] that

6    they would call the police."  FAC, Ex. 2 (page 1).  The men left, and Mr. Floyd continued to work

7    out.  The police arrived about 10 minutes later.  The police took Mr. Floyd to the front desk.  Mr.

8    Floyd continued to ask the two men for information.  *See* FAC, Ex. 2 (page 1).  "After more

9    attempts at answers and [Mr. Floyd] accusing [the men] of not working at the [24HR] location, the

10    police requested that [Mr. Floyd] leave the premises."  FAC, Ex. 2 (page 1).  Mr. Floyd showered,

11    got dressed, and left the locker room.  Mr. Floyd asked why he was "being kicked out of the gym"

12    and was told that "multiple people over time have accused me of harassing them."  FAC, Ex. 2

13    (page 1).  Mr. Floyd was not given any more specifics, including about what he had purportedly

14    done.  *See* FAC, Ex. 2 (page 1).

15          **October 2022.**  As alleged in the FAC, on October 1, 2022, Mr. Floyd went to the 24HF

16    gym in Hayward.  After he finished working out, four people approached him in the locker room:

17    two police officers and two 24HF employees.  One of the employees claimed that Mr. Floyd had

18    assaulted a woman (grabbing her bottom).  The employee also claimed that there were prior

19    incidents in which other persons had complained about Mr. Floyd.  The employee refused to give

20    Mr. Floyd any more details about either the current incident or the prior incidents and asked him

21    to leave.  Mr. Floyd said he needed to shower first.  The police officers then told Mr. Floyd that he

22    was trespassing and that he was under arrest.  Mr. Floyd said he had to get dressed and gather his

23    belongings but the officers did not allow him to do so.  The officers used force to handcuff Mr.

24    Floyd and escorted him, half naked, out of the gym.  *See* FAC (Ex. 1, at 1-2).

25          Subsequently, Mr. Floyd tried to get information from 24HF about the complaints that had

26    been lodged against him.  24HF refused to give him more information.  Eventually, on October

27    13, 2022, 24HF called Mr. Floyd and told him that he was no longer a member.  *See* FAC (Ex. 1,

28    at 2-3).

United States District Court
Northern District of California

Based on, *inter alia*, the above allegations, Mr. Floyd has asserted twelve causes of action, all based on state law.[1]

    (1)    Violation of § 17200.  Mr. Floyd argues that he was not given fair accommodation as a gym member and further asserts that he was denied a fair harassment policy. *See* FAC at 6; *see also* FAC at 7 (maintaining that 24HF violated their contract and that 24HF failed to have a "proper harassment policy").

    (2)    Intentional infliction of emotional distress ("IIED").  Mr. Floyd contends that 24HF intentionally inflicted emotional harm on him by not giving him information about the claims being made against him, by not allowing him a chance to refute the claims against him, by having the police remove him from the gym in July 2022 in front of gym patrons "during the busiest hours of the evening," and by forcing him out of the locker room "half-naked" in October 2022.  FAC at 9.

    (3)    Negligent infliction of emotional distress.  Mr. Floyd alleges that 24HF negligently caused him emotional harm because, *e.g.*, it did not give him information about the claims being made against him, demanded that he leave the gym without showering, asked the police to arrest him for trespassing, and refused to allow him to collect his belongings.  *See* FAC at 10-11.

    (4)    Violation of California Civil Code § 1714.  Section 1714(a) provides: "Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself. . .

---

[1] In his original complaint, Mr. Floyd asserted several federal causes of action but he dropped those claims in the FAC.  In the FAC, Mr. Floyd maintains that, even though he is no longer asserting federal claims, the Court still has subject matter jurisdiction because of diversity jurisdiction.  According to Mr. Floyd, at the time he filed the original complaint, he was a resident of Louisiana while 24HF is a citizen of California, and thus there was complete diversity.  *See* FAC at 1-2; *see also Rosado v. Wyman*, 397 U.S. 397, 405 n.6 (1970) (stating that it is a "well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile or the amount recovered falls short of [the minimum amount in controversy]").

United States District Court
Northern District of California

. The extent of liability in these cases is defined by the Title on Compensatory Relief.").  Mr. Floyd suggests that 24HF violated § 1714 because it refused to give him information about the claims being made against him and terminated his membership.

(5)     Failure to comply with the "Principal's Duty of Protection."  FAC at 11.  Mr. Floyd asserts that 24HF "had a contractual obligation to protect [him] within the gym" and failed to abide by this obligation because it conducted "[n]o type of investigation whatsoever before the police were called," did not give him any information about the claims being made against him, and ultimately terminated his gym membership.  FAC at 11-12.

(6)     Negligent training and supervision.  Mr. Floyd suggests that 24HF is liable for negligent training and supervision because the employees from the July and October 2022 incidents "remained employees" after each incident.  FAC at 13.  Also, there was no retraining of the employees afterward.  *See* FAC at 13.

(7)     Liability of a principal based on acts of agent/employee.  Mr. Floyd asserts that 24HF is liable for the acts of its employees.

(8)     False imprisonment/false arrest.  Mr. Floyd contends that 24HF caused him to be arrested for trespassing.  *See* FAC at 15-16.

(9)     Defamation/slander.  Mr. Floyd claims that a 24HF employee defamed him by telling two police officers that Mr. Floyd had "assaulted a woman by grabbing her buttocks."  FAC at 16.

(10)   Breach of the implied covenant of good faith and fair dealing.  Mr. Floyd contends that 24HF breached the implied covenant by failing to properly investigate the allegations he had harassed someone.  *See* FAC at 17.

(11)   Breach of the implied duty to perform with reasonable care.  Mr. Floyd asserts that the parties' contract required that 24HF "properly investigate claims of harassment and any other member-member dispute."  FAC at 17.

(12)   Breach of contract.  Mr. Floyd maintains that 24HF breached the parties' contract

4

United States District Court
Northern District of California

by failing to properly investigate the allegations made against him and by terminating his membership even though he did not violate any rules.  *See* FAC at 18-19.

## II.    DISCUSSION

A.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Fed. R. Civ. P. 12(b)(6).  To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'"  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (internal quotation marks omitted).  In evaluating the viability of a claim, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted).

B.    Count 4: Violation of California Civil Code § 1714

In Count 4, Mr. Floyd asserts a claim based on a violation of California Civil Code § 1714. Section 1714 provides in relevant part as follows:

> Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or

person, except so far as the latter has, willfully or by want of
ordinary care, brought the injury upon himself or herself.

Cal. Civ. Code § 1714(a).  24HF argues that the claim for violation of § 1714 should be dismissed

because a private right of action does not exist under the statute.  The Court agrees.  Plaintiff has

cited no authority indicating that the statute itself gives rise to a private cause of action.  *Cf.*

*Cabral v. Ralphs Groc. Co.*, 51 Cal. 4th 764, 768 (2011) (noting that § 1714(a) simply

"establishes the general duty of each person to exercise, in his or her activities, reasonable care for

the safety of others").  The statute may inform a tort cause of action for negligence, but Plaintiff

fails to establish this section provides for a statutory cause of action.  The claim under Section

1714 is therefore dismissed with prejudice.  *See Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741

F.3d 1082, 10986 (9th Cir. 2014) (stating that a "[a] complaint should not be dismissed without

leave to amend *unless* amendment would be futile") (emphasis added).

C.    Count 5: Failure to Comply with the "Principal's Duty of Protection"

    In Count 5, Mr. Floyd asserts a claim for failure to comply with the "Principal's Duty of

Protection."  FAC at 11.  The claim seems to be based on the Restatement of Agency, which Mr.

Floyd cites in his FAC.  *See* FAC at 11 (citing Rest. 3d of Agency § 7.06[2]).  Mr. Floyd alleges that

24HF "had a contractual obligation to protect [him] within the gym" and failed to abide by this

obligation because it conducted "[n]o type of investigation whatsoever before the police were

called," did not give him any information about the claims being made against him, and ultimately

terminated his gym membership.  FAC at 11-12.

    24HF moves to dismiss the claim as it is not a cause of action.  24HF is correct; the

Restatement does not establish any private right of action under California law.  And while a

principal may be liable for the acts of an agent under some circumstances, the agency itself does

not create a legal claim.  Therefore, the claim is dismissed with prejudice.  To the extent Mr. Floyd

is arguing that 24HF did not comply with the contract between the parties, that is a claim for

breach of contract.

_____

[2] Section 7.06 states: "A principal required by contract or otherwise by law to protect another
cannot avoid liability by delegating performance of the duty, whether or not the delegate is an
agent."  Rest. 3d of Agency § 7.06.

United States District Court
Northern District of California

1    D.    Count 7: Liability of Principal Based on Acts of Agent/Employee

2        In Count 7, Mr. Floyd brings a claim for liability of a principal based on acts of

3    agent/employee.  Essentially, Mr. Floyd asserts that 24HF is liable for the acts of its employees.

4    *See* FAC at 14 (citing Restatement of Agency).[3]  24HF moves to dismiss this claim because it is

5    not clear what kind of claim Mr. Floyd is trying to articulate here.  The Court agrees with 24HF.

6    Mr. Floyd is simply articulating theories by which 24HF could be held liable for a tort of its

7    employees but he has failed to identify any underlying tort.  Again, an agency principle does not in

8    itself create an independent cause of action.  The Court therefore grants the motion to dismiss this

9    claim with prejudice.

10    E.    Count 2: IIED

11        Count 2 is a claim for IIED.  The elements for an IIED claim are as follows: "(1) defendant

12    engaged in extreme and outrageous conduct (conduct so extreme as to exceed all bounds of

13    decency in a civilized community) with the intent to cause, or with reckless disregard to the

14    probability of causing, emotional distress; and (2) as a result, plaintiff suffered extreme or severe

15    emotional distress."  *Berry v. Frazier*, 90 Cal. App. 5th 1258, 1273 (2023).

16        In the FAC, Mr. Floyd contends that 24HF intentionally inflicted emotional harm on him

17    by not giving him information about the claims being made against him, by not allowing him a

18    chance to refute the claims against him, by having the police remove him from the gym in July

19

20    [3] Mr. Floyd cites to both the Restatement (Second) on Agency, and the Restatement (Third).  *See*
     Rest. 2d of Agency § 219(1) (providing that "[a] master is subject to liability for the torts of his
21    servants committed while acting in the scope of their employment"); Rest. 3d of Agency § 7.03
     (addressing when a principal is subject to direct liability to a third party harmed by an agent's
22    conduct and when a principal is subject to vicarious liability).

23        Mr. Floyd also cites to additional sections of the Restatement (Third), but they are clearly
     not on point as they address the liability of an agent, not the liability of a principal.

24    • Section 7.01 states: "An agent is subject to liability to a third party harmed by the agent's
        tortious conduct.  Unless an applicable statute provides otherwise, an actor remains subject
25       to liability although the actor acts as an agent or an employee, with actual or apparent
        authority, or within the scope of employment."  Rest. 3d of Agency § 7.01.
26    • Section 7.02 states: "An agent's breach of a duty owed to the principal is not an
        independent basis for the agent's tort liability to a third party.  An agent is subject to tort
27       liability to a third party harmed by the agent's conduct only when the agent's conduct
        breaches a duty that the agent owes to the third party."  *Id.* § 7.02.
28

United States District Court
Northern District of California

1    2022 in front of gym patrons "during the busiest hours of the evening," and by forcing him out of

2    the locker room "half-naked" in October 2022.  FAC at 9.  According to Mr. Floyd, he was

3            traumatized by both incidents.  I've abruptly lost many friends I
         connected with at 24 Hour Fitness and those supporting
4            relationships at the gym.  Having already suffered through many
         other police brutality events, this event has added onto previous
5            traumas, and I feel even more unsafe when near police officers.  I
         constantly fear every conversation I participate in can possibly result
6            in traumatic events like those at [24HF].  I am currently in and
         seeking professional counseling.  So far, I have only found an online
7            support group and a life coach.

8    FAC at 20.

9            24HF argues that the IIED claim should be dismissed because Mr. Floyd has failed to

10   allege (1) extreme and outrageous conduct and (2) extreme or severe emotional distress.  The

11   Court agrees with the first contention and therefore does not address the second.

12           Specifically, the Court holds that 24HF's alleged failure to give Mr. Floyd more

13   information about the complaints against him and failure to give him a chance to tell his side of

14   the story does not constitute extreme or outrageous conduct.  Here, Mr. Lloyd is essentially

15   contending that 24HF failed to conduct a proper investigation before it took action against him.

16   As a matter of law, this kind of failure is not conduct "so extreme as to exceed all bounds of that

17   usually tolerated in a civilized community."  *Bock v. Hansen*, 225 Cal. App. 4th 215, 233 (2014)

18   (internal quotation marks omitted).  Mr. Floyd is not asserting that 24HF completely made up the

19   claims that other gym members had made complaints about him (although he asserts that the

20   harassment claims made by the members were not true).[4]  *See* Opp'n at 5.  Nor is he asserting that

21   24HF did no investigation whatsoever.  *Compare Bohnert v. Roman Cath. Archbishop of S.F.*, 67

22   F. Supp. 3d 1091, 1099 (N.D. Cal. 2014) (rejecting defendant's argument that plaintiff was

23   "'merely unhappy about the promptness and effectiveness of the investigation'"; plaintiff alleged

24   that "defendants deleted incriminating photographs from students' phones, refused to investigate

25   _____

26   [4] At the hearing, Mr. Floyd suggested for the first time that no one had actually lodged a complaint
     about him in October 2022.  The FAC, however, does not contain any allegation that 24HF
27   fabricated the October 2022 complaint.  Furthermore, even if Mr. Floyd is now claiming
     fabrication, that claim is speculative; it is not based on any concrete factual allegations.  Mr. Floyd
28   has simply suggested fabrication because, during this litigation, 24HF has not identified the
     alleged victim by name.

United States District Court
Northern District of California

or take corrective action, and failed to address past incidents of graphic 'up-skirt' photographs which had been going on for at least three years," and "[a] reasonable observer or trier of fact could find these actions to be 'outrageous,' 'extreme,' and beyond 'that usually tolerated in a civilized society'"); *Prasad v. Santa Clara Cnty. Dep't of Soc. Servs.*, No. 15-cv-04933-BLF, 2016 U.S. Dist. LEXIS 150750, at \*7-8 (N.D. Cal. Oct. 28, 2016) (stating that, "[i]f Plaintiff can prove that Defendants intentionally re-entered his name into the [Child Abuse Central Index] without a [California Child Abuse and Neglect Report Act] hearing or without conducting any investigation, he may be able to show that Defendants' conduct was outrageous").  To the extent Mr. Floyd complains he should not have been ejected from the gym before a fuller investigation was done, in view of the fact that 24HF had received complaints about Mr. Floyd's harassment of other members whose rights and interests could be jeopardized by Mr. Floyd's continued presence, the actions of 24HF, even if the investigation were not adequate, cannot be deemed extreme and outrageous.  *Cf. Rincker v. Ill. Dep't of Corr.*, No. 08-cv-1160, 2010 U.S. Dist. LEXIS 75206, at \*28 (C.D. Ill. July 26, 2010) (in case where employee sued employer for failure to respond to co-worker harassment, noting that an employer's "separation of the victim from the alleged harasser can be an appropriate response to a claim of harassment"); *see also Smith v. Rock-Tenn. Servs.*, 813 F.3d 298, 311 (6th Cir. 2016) (noting that an employee may sue their employer for failure to address harassment by a co-worker and that "[e]ven separating the harasser and victim immediately *may not be enough* without further action on the employer's part") (emphasis added).

The Court also agrees with 24HF that Mr. Floyd has not sufficiently alleged extreme and outrageous conduct simply because, as alleged, 24HF had the police remove him from the gym in July 2022 in front of gym patrons "during the busiest hours of the evening," and forced him out of the locker room "half-naked" in October 2022.  Mr. Floyd refused to leave when directed to do so by staff.  He arguably then trespassed and recruiting the police to remove him was not extreme or outrageous.  There is nothing to indicate that 24HF deliberately timed the removal to humiliate Mr. Floyd.  As for October 2022, the allegations in the FAC indicate that it was the police's actions that led to Mr. Floyd being removed half naked after he refused to leave immediately.  Given the possible urgency of his removal, 24HF cannot be deemed to have engaged in extreme or

1   outrageous conduct as a result of the police not affording Mr. Floyd and opportunity to shower and

2   dress in street clothes.

3       The Court therefore dismisses the claim for IIED.  The dismissal is with prejudice as Mr.

4   Floyd has failed to show that he could amend the claim so that it would be viable.

5   F.      Count 6: Negligent Training and Supervision

6       Count 6 is a claim for negligent training and supervision.  In the FAC, Mr. Floyd suggests

7   that 24HF is liable for negligent training and supervision because the employees from the July and

8   October 2022 incidents "remained employees" after each incident.  FAC at 13.  Also, there was no

9   retraining of the employees afterward.  *See* FAC at 13.

10      In its motion, 24HF argues that this negligence claim should be dismissed because Mr.

11  Floyd has fundamentally misunderstood what such a negligence claim is about.  There must be

12  allegations that, because of a failure to train or supervise, the plaintiff was injured.  Here, that

13  would mean, because 24HF failed to train or supervise, its employees treated Mr. Floyd

14  improperly in July and October 2022.  24HF notes that a claim for negligent training or

15  supervision often involves "an employer retaining an employee with a past history of

16  wrongdoing," Mot. at 13, but Mr. Floyd has made no allegation that the employees involved with

17  the July and October 2022 incidents had a past history of wrongdoing.

18      In his opposition, Mr. Floyd implicitly recognizes there is some deficiency in his claim as

19  pled.  He has recharacterized the claim, arguing that "[f]ailing to retrain after the first incident *led*

20  *to* the second incident.  The actions after the second incident were acknowledged and approved by

21  management, who then decided to cancel my membership."  Opp'n at 7 (emphasis added).  Even

22  if the Court accepts this new theory, it is problematic.  The employees involved in the July and

23  October 2022 incidents were different.  *See* Opp'n at 13 (stating that employees involved in the

24  July 2022 incident were "manager Martinez and employee Sanchez" and that employees involved in

25  the October 2022 incident were "manager Kane and employee Pratt").  Thus, this is not a case

26  where 24HF employees allegedly acted improperly in July 2022 and should have been retrained

27  but were not, which then led the same employees to engage in the same kind of misconduct again

28  in October 2022.  Furthermore, even if the employees in the July 2022 incident acted improperly,

United States District Court
Northern District of California

1   there is nothing to suggest that their conduct was so problematic or part of a pattern or practice of

2   improper conduct such that 24HF was put on notice that it should provide better training or

3   supervision – *i.e.*, such that its failure to act was part of the reason why employees acted

4   improperly in October 2022.  Notably, Mr. Floyd contends what happened in October 2022

5   differed in some ways from the July 2022 incident where he was permitted to shower and then

6   leave.

7           Therefore, the Court grants the motion to dismiss the claim for negligent training and

8   supervision.  The dismissal is with prejudice based on futility (*i.e.*, even Mr. Floyd's new theory as

9   articulated in the opposition brief is problematic).

10  G.      Count 8: False Imprisonment/False Arrest

11          Count 8 is a claim for false imprisonment/false arrest.  Mr. Floyd contends that 24HF

12  caused him to be arrested for trespassing.  This is for the October 2022 incident only.  *See* FAC at

13  15-16 (alleging that a 24HF manager "walked into the locker room and demanded the Plaintiff

14  leave [the] gym, claiming harassment of its customer," and then "ordered the police to arrest the

15  Plaintiff for trespassing to not allow the Plaintiff to finish clothing himself within the locker

16  room"); FAC, Ex. 1 (page 1) (alleging that "[t]he unknown man [wearing a 24HF badge] asked me

17  to leave," that "I told him that I need to take a shower first," that "[t]he unknown male refused this

18  request," and that "the officers told me that I am trespassing and told me that I am under arrest").

19          A private citizen can be held liable for a false arrest.  As Mr. Floyd points out, there is a

20  CACI jury instruction reflecting such:

21                  [Name of plaintiff] claims that [he/she/nonbinary pronoun] was
                    wrongfully arrested by [name of defendant].  To establish this claim,
22                  [name of plaintiff] must prove all of the following:

23                  1.      That [name of defendant] intentionally caused [name of
                            plaintiff] to be arrested without a warrant; [and]
24
                    2.      That [name of plaintiff] was [actually] harmed; and
25
                    3.      That [name of defendant]'s conduct was a substantial factor
26                          in causing [name of plaintiff]'s harm.

27                  [A private person does not need to physically restrain a suspect in
                    order to make a citizen's arrest.  A private person can make a
28                  citizen's arrest by calling for a peace officer, reporting the offense,

United States District Court
Northern District of California

11

and pointing out the suspect.]

CACI 1403.

While CACI 1403 sets forth the elements of such a claim for false arrest, the next jury

instruction – CACI 1404 – provides for an affirmative defense to such a claim.

> [Name of defendant] claims the citizen's arrest was not wrongful
> because [he/she/nonbinary pronoun] had the authority to cause
> [name of plaintiff] to be arrested without a warrant.
>
> [If [name of defendant] proves that [name of plaintiff] committed or
> attempted to commit a crime in [name of defendant]'s presence, then
> the arrest was lawful.]
>
> [or]
>
> [If [name of defendant] proves that a felony was committed and that
> [insert facts, that if proved, would establish that defendant had
> reasonable cause to believe that plaintiff had committed a felony],
> then the arrest was lawful.]

CACI 1404.

In its motion to dismiss, 24HF essentially argues that the claim for false arrest should be

dismissed because the arrest was not false: Mr. Floyd engaged in trespassing by not leaving when

asked (as alleged in the FAC).  Although 24HF has tried to frame this argument as one of

causation, *see* Mot. at 15 (asserting that 24HF's "employee did not cause Plaintiff's arrest [but]

[r]ather, Plaintiff did"), 24HF is really arguing for dismissal based on an affirmative defense – *i.e.*,

no wrongful arrest.  *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013)

(noting that an affirmative defense that appears on the face of a pleading can be the basis for a

dismissal under Rule 12(b)(6)).

As for the merits of 24HF's argument, the Court first takes stock of what exactly Mr.

Floyd was arrested for.  24HF has provided a copy of the police case report.  *See* RJN, Ex. G (case

report).  The report reflects that Mr. Floyd was arrested for two offenses: (1) trespass of real

property, a violation of California Penal Code § 602, and (2) resisting, delaying, or obstructing a

peace officer, a violation of California Penal Code § 148(a)(1).  The Court disregards the second

offense as there is no indication that Mr. Floyd seeks to hold 24HF liable for false arrest based on

that offense.

Section 602 provides that "a person who willfully commits a trespass by any of the

following acts is guilty of a misdemeanor." Cal. Pen. Code § 602. The police case report indicates that the police arrested Mr. Floyd based on § 602(m) specifically:

> The employee advised Floyd to leave the premises because he violated gym policies; however, Floyd refused to leave and began approaching the employee as if he was going to assault him physically. Officer Sawyer and I intervened and advised Floyd to leave. Floyd refused to leave, and the reporting party stated he wanted to place Floyd under citizen's arrest for trespassing. Due to the reporting party being employed by 24-hours fitness [sic], asking Floyd to leave, and Floyd refusing, he violated 602(m).

RJN, Ex. G (Report at 4). Section 602(m) defines the following as trespassing: "Entering and occupying real property or structures of any kind without the consent of the owner, the owner's agent, or the person in lawful possession." Cal. Pen. Code § 602(m).

As noted above, CACI 1404 provides that an arrest was not unlawful if the defendant proves that that the plaintiff *committed* (or attempted to commit) a crime in the defendant's presence. *See* CACI 1404. Although that is a relatively high standard, 24HF has a meritorious argument that, based on the allegations in the FAC, Mr. Floyd did commit the offense of trespassing: as alleged, he was asked to leave private property and did not do so. (As alleged in the FAC, Mr. Floyd stated he wanted to take a shower first.) Mr. Floyd does not cite any authority suggesting that 24HF could revoke its consent to his presence in the gym (for purposes of trespass law) only if it had a valid basis to revoke. *Cf. See Cohodes v. MiMedx Grp., Inc.*, No. 22-cv-00368-RFL, 2024 U.S. Dist. LEXIS 181477, at *18 (N.D. Cal. Sept. 24, 2024) (noting that the interest that "the tort of trespass protects [is] the ownership or possession of land"). Moreover, even if there were such a requirement, here, the allegations of the FAC establish that 24HF had a basis to revoke that permission: a gym member had complained he had touched her inappropriately, and Mr. Floyd has not alleged that 24HF knew or should have known that the complaint was not real. Mr. Floyd cites no similar case where a court has held an owner cannot revoke permission.

Accordingly, the Court grants the motion to dismiss the claim for false imprisonment/arrest. The dismissal is with prejudice as the claim is futile based on the allegations in the FAC. Furthermore, Mr. Floyd cannot plead around the allegations in the FAC simply to

1    avoid dismissal.

2    H.    Count 9: Defamation/Slander

3        In Count 9, Mr. Floyd claims that a 24HF employee defamed him by telling two police

4    officers that Mr. Floyd had "assaulted a woman by grabbing her buttocks." FAC at 16. 24HF

5    moves to dismiss the claim on the basis that the employee's statement was privileged under

6    California Civil Code § 47. Section 47(b) states in relevant part that

7            [a] privileged publication or broadcast is one made:

8            . . .

9            (b) In any (1) legislative, (2) judicial proceeding, (3) *in any other*
             *official proceeding authorized by law*, or (4) in the initiation or
10           course of any other proceeding authorized by law and reviewable
             pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of
11           Part 3 of the Code of Civil Procedure [addressing writs of mandate] .
             . . .
12

13   Cal. Civ. Code § 47(b) (emphasis added). *See, e.g.*, *Devis v. Bank of Am.*, 65 Cal. App. 4th 1002,

14   1007-08 (1998) (stating that "reports made by citizens to police regarding potential criminal

15   activity are communications [that] fall within the section 47 privilege"; such a communication is

16   part of an official proceeding just as much as a communication made after an official investigation

17   has commenced).

18       The subsection, however, "does not make privileged any communication between a person

19   and a law enforcement agency in which the person makes a false report that another person has

20   committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law

21   enforcement intervention, *knowing* that the report is false, or *with reckless disregard* for the truth

22   or falsity of the report." *Id.* (fifth exception to § 47(b)) (emphasis added); *cf. id.* § 47(c)

23   (providing that a publication is privileged if made "[i]n a communication, without malice, to a

24   person interested therein, (1) by one who is also interested").

25       In his opposition, Mr. Floyd argues that the 24HF employee spoke with reckless disregard

26   for the truth or falsity of the gym member's complaint about him. "Accepting the accusation of

27   the 'accuser' without any further questioning is a reckless disregard for the truth . . . ." Opp'n at 7.

28   Though not entirely clear**,** he also suggests reckless disregard because "the accuser cannot [even]

14

1  be identified" by 24HF.  Opp'n at 8.

2       Although Mr. Floyd's position is not entirely without merit, the Court still grants the

3  motion to dismiss the claim.  The Court cannot say that the 24HF employee acted with reckless

4  disregard because, as alleged, the information he had before him was that (1) a woman had

5  complained about Mr. Floyd grabbing her bottom and (2) there were prior incidents in which

6  customers had complained about Mr. Floyd.  *See* FAC, Ex. 1 (page 1) ("The unknown man

7  wearing a 24 Hour Fitness badge stated that I assaulted someone. . . . [H]e said that I grabbed a

8  woman's ass and she reported this. . . . [¶] The unknown man then stated there were multiple other

9  incidents prior to this incident where people complained about me.").  There are no allegations

10  that the 24HF knew or should have known that the complaints against Mr. Floyd were not

11  substantiated in any way.  Mr. Floyd does not allege with specificity facts which establish such

12  knowing falsity or reckless disregard for the truth.  *See generally Iqbal*, 556 U.S. at 662 (2009);

13  *Twombly*, 550 U.S. at 544.  Mr. Floyd has had sufficient opportunities to make any such

14  allegations in his prior complaints.

15       The Court therefore dismisses the claim with prejudice.

16  I.   Count 3: Negligent Infliction of Emotional Distress

17       In his claim for negligent infliction of emotional distress ("NIED"), Mr. Floyd alleges that

18  24HF negligently caused him emotional harm because, *e.g.*, it did not give him information about

19  the claims being made against him, demanded that he leave the gym without showering, asked the

20  police to arrest him for trespassing, and refused to allow him to collect his belongings.  *See* FAC

21  at 10-11.  24HF argues that the NIED claim should be dismissed because it is simply a claim for

22  negligence, *see Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993) (stating that

23  "there is no independent tort of negligent infliction of emotional distress[;] [t]he tort is

24  negligence"), and Mr. Floyd has failed to plead all of the elements of a negligence claim – in

25  particular, the element of duty.  *See* Mot. at 11.  24HF asserts:

26       there are no facts alleged that 24 Hour Fitness owed Plaintiff a duty
         under the circumstances of this case where Plaintiff was repeatedly
27       accused of harassing and touching gym members.  In his opposition,
         Plaintiff asserts that the duty is a "special relationship" between him
28       and 24 Hour Fitness derived from being a contracted gym customer

United States District Court
Northern District of California

1

2

3

> of 24 Hour Fitness.  Other than being a contracted gym member of
> 24 Hour Fitness, Plaintiff fails to include any facts to support what
> "special relationship" created a duty under these circumstances.
> Instead, Plaintiff states as a legal conclusion that a duty was owed,
> without any support, and the Court may not assume the truth of such
> conclusions.

4   Reply at 4.

5          Duty is a question of law for a court to decide, *see Kesner v. Superior Court*, 1 Cal. 5th

6   1132, 1142 (2016), but a court's decision can turn on the underlying facts of the case.  *See*

7   *Bararsani v. HDI Global Ins. Co.*, No. CV 21-3679 PA (SHKx), 2021 U.S. Dist. LEXIS 215951,

8   at *3 (C.D. Cal. Nov. 5, 2021) (indicating that a negligence claim fails if a plaintiff does not allege

9   facts establishing a legal duty).  "Whether a particular defendant owes a particular plaintiff a legal

10  duty of care (actionable in a claim for negligence) is, at bottom, a 'question of public policy' –

11  namely, should that plaintiff's interests be entitled to legal protection against the defendant's

12  conduct?"  *Shalghoun v. North Los Angeles County Regional Center, Inc.*, 99 Cal. App. 5th 929,

13  943 (2024).

14         The Court holds that, in the case at bar, the issue of legal duty cannot be decided at the

15  12(b)(6) phase and is more appropriately analyzed through the lens of summary judgment which is

16  predicated on a factual record.  The existence of a legal duty is not implausible based on the

17  allegations in the FAC.  Section 1714(a) (discussed above) provides a potential basis for a legal

18  duty.  *See Shalghoun*, 99 Cal. App. 5th at 943 (noting that "a person has a legal duty to act

19  reasonably and with due care under the circumstances with respect to their own actions," which

20  arises from § 1714(a)).  If the investigation were inadequate (in part because 24HF failed to give

21  Mr. Floyd an adequate opportunity to answer the claims of harassment) and thus 24HF had no

22  cause to eject him and to do so on an argent basis, the harm to Mr. Floyd would be foreseeable.

23         To be sure, the existence of a duty may be informed by public policy considerations that

24  warrant limiting that legal duty.  *See id.* at 946.  Those considerations are known as the *Rowland*

25  factors and fall into two categories.

26

27

28

> The first category examines the foreseeability of the plaintiff's
> injury.  *Rowland* identifies three foreseeability considerations: (1)
> whether """"the category of negligent conduct at issue is sufficiently
> likely to result in the kind of harm experienced that liability may
> appropriately be imposed"""; (2) the degree of certainty that the

United States District Court
Northern District of California

16

plaintiff suffered injury; and (3) the closeness of the connection "'between the defendant's conduct and the injury suffered.'"

*Id.*

The second category

ask[s] whether "'the social utility of the activity concerned is so great, and avoidance of the injuries so burdensome to society, as to outweigh the compensatory and cost-internalization values of negligence liability.'"  In other words, they ask whether recognizing the duty "would deter socially beneficial behavior."  [These] countervailing policy considerations are: (1) the moral blame attaching to the defendant's conduct, which is "typically found when the defendant reaps a financial benefit from the risks it has created"; (2) whether liability will "'prevent[] future harm,'" which looks to "both the positive and the negative societal consequences of recognizing a tort duty" in terms of how the imposition of liability is likely to play out; (3) the "'extent of the burden to the defendant and consequences to the community of imposing a duty . . . . with resulting liability for breach,'" including whether recognizing tort liability "would impose enormous and unprecedented financial burdens" on likely defendants; and (4) the availability of insurance.

*Id.* at 947.

24HF's position does not address the legal analysis of duty as laid out above.  Some of the public policy considerations in the first category arguably weigh in Mr. Floyd's favor.  More important, however, the public policy considerations in the second category need to be evaluated – in this case at least – based on a factual record.  If, for example, the 24HF employees were informed that Mr. Floyd had engaged in serious and/or repeated problematic conduct, then it is more likely that 24HF did not owe Mr. Floyd a legal duty to refrain from seeking his immediate removal from the premises.  Alternatively, even if a duty were found, 24HF's conduct based on the circumstances might be found reasonable and not negligent.  The fact that the Court finds the conduct could not have been deemed extreme and outrageous as required to state a claim for IIED does not preclude a claim for negligence.

Accordingly, the Court denies the motion to dismiss Mr. Floyd's NIED/negligence claim.  The Court's ruling here does not preclude 24HF from arguing, in a summary judgment motion, that there are no facts to support a legal duty owed to Mr. Floyd or negligence.

United States District Court
Northern District of California

17

United States District Court
Northern District of California

J.    Counts 12, 10, and 11: Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, and Breach of the Implied Duty to Perform with Reasonable Care

In Counts 10-12, Mr. Floyd essentially asserts contract-based claims. For these counts, Mr. Floyd's basic contention is that 24HF (1) failed to properly investigate and (2) improperly terminated his membership even though he did not violate any rules. 24HF moves to dismiss the claims on the basis that they are contrary to the terms of the parties' contract of which it asks the Court to take judicial notice.[5]

A copy of the parties' contract – *i.e.*, the membership agreement – can be found at Exhibit A attached to 24HF's request for judicial notice ("RJN"). The relevant terms of the contract are as follows:

- "[Y]ou agree that by signing this Agreement, you purchased a membership or services, agree to all the terms in this Agreement, and agree to follow 24 Hour's Membership Policies and any Rules." RJN, Ex. A (Agreement ¶ 1).
- "24 Hour may, at its option, terminate your  member if . . . (5) you fail to follow any of 24 Hour's Membership Policies or club Rules or violate any part of this Agreement, or (6) your conduct is improper or harmful to the best interest of 24 Hour or its members." RJN, Ex. A (Agreement ¶ 6(f)).

As indicated above, the parties' contract refers to Membership Policies and Club Rules ("Policies"). Those are attached as Exhibit B to 24HF's RJN. The Policies state in relevant part that "[y]ou agree to follow the Policies and Rules" and that,

> [w]hile in 24 Hour facilities, 24 Hour does not permit and will not tolerate any inappropriate conduct. You may not engage in any conduct in any 24 Hour facility that includes, without limitation, using loud, abusive, offensive, insulting, demeaning language, profanity, lewd conduct or any other conduct that harasses or is bothersome to members, guests or employees.
>
> **VIOLATION OF POLICIES OR RULES**: If any member or guest violates any of the Policies or Rules, 24 Hour will ask that

---

[5] 24HF has also asked the Court to take judicial notice of conflicts that Mr. Floyd has had with other gyms (*e.g.*, Planet Fitness, American Barbell). Those conflicts are not relevant to the case at bar; thus, the Court does not need to take judicial notice of any suits that Mr. Floyd has brought against other gyms after having his memberships in those gyms terminated.

United States District Court
Northern District of California

> person to stop or leave.  A member's violation of any of the Policies
> or Rules may also cause 24 Hour, in its sole discretion, to terminate
> that person's membership and/or other agreements.

RJN, Ex. B (Policies at 1).

Contrary to what 24HF argues, the membership agreement and policies on their face do not preclude the contract-based claims from moving forward.  Although 24HF had the right to terminate his membership if, *e.g.*, he violated 24HF's Policies, it is a disputed fact as to whether Mr. Floyd violated the Policies (*i.e.*, engaged in harassing conduct).  Although the Policies provide that 24HF has the "sole discretion" to terminate a membership, that sole discretion is implicated only if a member has violated the Policies.  Neither the Policies nor the membership agreement states that 24HF has "sole discretion" *to decide* whether a violation of the Policies or agreement occurred in the first place.  Thus, Mr. Floyd has alleged he did not violate the Policies, and that issue cannot be decided by a motion to dismiss.  Moreover, even though the agreement does not set forth a procedural right with respect to an investigation into allegations of a Policy violation by a member, Mr. Floyd may legally assert that 24HF breached the implied covenant of good faith and fair dealing or implied duty to perform with reasonable care by not conducting a more fulsome investigation. *See, e.g.*, CACI 328 ("The parties' contract requires that [name of defendant] [specify performance alleged to have been done negligently, e.g., install cable television service]. It is implied in the contract that this performance will be done competently and with reasonable care.  [Name of plaintiff] claims that [name of defendant] breached this implied condition.").

The Court therefore denies the motion to dismiss the claim for breach of contract and the claim for breach of the implied covenant and breach of the implied duty.  Again, this does not foreclose examination upon a motion for summary judgment based on a factual record.

K.      Count 1: Violation of § 17200

Section 17200 prohibits unlawful, unfair, and/or fraudulent business acts or practices.  In the FAC, Mr. Floyd asserts that 24HF violated § 17200 because he was not given fair accommodation as a gym member and because he was denied a fair harassment policy.  *See* FAC at 6; *see also* FAC at 7 (maintaining that 24HF violated their contract and that 24HF failed to have a "proper harassment policy").  Based on these allegations, Mr. Floyd is implicitly invoking the

unfair prong of § 17200.

In his opposition brief, Mr. Floyd adds more information about the claim of unfair business acts or practices: (1) for the July 2022 incident, he was not told of what his alleged misconduct was specifically, when it took place, and who reported it; and (2) for the October 2022 incident, 24HF did not tell him about the problem when it occurred but rather chose to confront him after it had called the police and demanded that he leave "over allegations unsupported by evidence." Opp'n at 5. Thus, the gist of Mr. Floyd's § 17200 claim is that 24HF did not properly investigate, including by giving him an opportunity to defend himself.

24HF's arguments for dismissal of the § 17200 claim are not persuasive. 24HF does not contend that §17,200 generally does not apply. Instead, it suggests that it did tell Mr. Floyd about what his misconduct was in July 2022, but Mr. Floyd's point is that 24HF simply said he had engaged in harassment without providing any more specifics. *See* FAC, Ex. 2 ("They informed me that multiple people over time have accused me of harassing them. I asked them what I did. They informed me that they could not tell me."). Ultimately, it is a question of fact as to whether 24HF treated him fairly – *i.e.*, did an adequate investigation before asking him to leave the gym, calling the police, and/or terminating his membership. Thus, the motion to dismiss the § 17200 claim is denied.

The Court notes that 24HF does not make any argument that Mr. Floyd's § 17200 claim is problematic to the extent he may be seeking damages as relief. The Court notes, however, that only restitution rather than damages is available under § 17,200. But even if 24HF had made that argument, that still would not dispose of the § 17200 claim in its entirety because Mr. Floyd also seeks injunctive relief: specifically, he is asking that his gym membership "be reinstated." FAC at 21.

/ / /

/ / /

/ / /

/ / /

/ / /

United States District Court
Northern District of California

### III.    CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the motion to dismiss. All claims are dismissed – with prejudice – except for (1) the NIED/negligence claim and (2) the claims for breach of contract and breach of the implied covenant and breach of the implied duty.

This order disposes of Docket No. 66.


**IT IS SO ORDERED**.


Dated: January 14, 2025

_____
EDWARD M. CHEN
United States District Judge