United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DEVIN FLOYD,

            Plaintiff,

    v.

24 HOUR FITNESS USA, LLC,

            Defendant.

Case No. 23-cv-00871-EMC

**ORDER ON PARTIES' MOTIONS FOR SUMMARY JUDGMENT**

Docket No. 95, 96

## I.      INTRODUCTION

Plaintiff Michael Devin Floyd, proceeding pro se, has filed suit against Defendant 24 Hour Fitness USA, LLC ("24H"). Mr. Floyd alleges that 24H violated his rights by, *inter alia*, having him removed from a gym on two different occasions and then terminating his gym membership. Before the Court are both parties' motions for summary judgment. *See* Dkts. 95, 96. For the reasons below, the Court **GRANTS** 24H's motion and **DENIES** Mr. Floyd's motion.

## II.      BACKGROUND

### A.    Factual Background

The undisputed facts and any facts subject to dispute but viewed in Mr. Floyd's favor establish the following.

#### 1.    General Background

On January 5, 2022, Mr. Floyd signed up for a gym membership with 24H and entered into the relevant membership agreement ("Agreement"). Dkt. 96-4, Ex. A – Agreement. The Agreement requires that members "not engage in any conduct in any 24 Hour facility that includes, without limitation, using loud, abusive, offensive, insulting, demeaning language, profanity, lewd conduct or any conduct that harasses or is bothersome to members, guests or

employees." *Id.* Ex. B – 24H Membership Policies and Club Rules.  Section 6 of the Agreement on Termination for Cause states that 24H may, at its option, terminate an individual's gym membership if the individual fails to follow any of the Club Rules or any part of the Agreement, or the individual's "conduct is improper or harmful to the best interest of 24 Hour or its members." *Id.*

The relevant incidents occurred at the 24H gym located at 2480 Whipple Road in Hayward, California.  Dkt. 96-4 at 2 (Martinez Decl. ¶ 2).

### 2.    Complaints Against Mr. Floyd

24H filed entries regarding five member complaints about Mr. Floyd's conduct.  *See* Dkt. 96-4 at 18 (Ex. C – Mr. Floyd's Member Profile showing other members' complaints regarding Mr. Floyd's conduct).[1]

### a.    July 9, 2022

On July 9, 2022, multiple "female members…complain[ed] that [Mr. Floyd] ha[d] been harassing [them] during [their] workouts." *Id.*  One such member complained that he had "touched her mid workout." *Id.*  When she told him, "please don't touch me," he responded, "when was the last time a man touched you like that." *Id.*

| | | | | |
|---|---|---|---|---|
| 07/18/2022 08:37 PM PDT | 146643Eric Tapia-Barron | BACK OFFICE | N/A | chrome_reader_mode |

Escalated Issue We have had a handful of female members come and complain that he has been harassing during there workouts. On one occasion 7/9/2022 he went up to a female guest and touched her mid workout. She responded with please don't touch me, but we went to say 'when was the last time a man touched you like that'. Less

*Id.*

### b.    July 18, 2022

On July 18, 2022, 24H made an entry in Mr. Floyd's member profile regarding the

---

[1] In the hearing on the motions, 24H authenticated the membership profile.  They appear to be records kept in the regular course of 24H's business and made contemporaneously or close to contemporaneously with reported statements.  24H proffered these records as business records and are therefore excepted from the exclusion of hearsay.  Mr. Floyd offered no contrary evidence and presented no meritorious objection.  Furthermore, these records, in the context of summary judgment, may be considered pursuant to Rule 54(c)(2).  Where Mr. Floyd disputes the facts reported, those disputes are noted below.

following events. *Id.*[2]  A member, identified as V.H., stated that Mr. Floyd "tried to speak to [her] when H.S. [(her friend)] stepped out to the bathroom." Dkt. 96-6 at 2 (V.H. Decl. ¶ 3). While she worked out, he "stood unnecessarily close to [her]," which she felt was an "inva[sion] [of her] personal space." *Id.*  When she and her friend finished working out, they tried to "walk[] away quickly to try to get away from Mr. Floyd, but he followed [them], and kept trying to talk to [her]." *Id.* (¶ 4).  On V.H's behalf, her friend told him that V.H. "did not want to speak with him (which was true)." *Id.*  In response, "Mr. Floyd raised his voice stating that [she] could speak for [herself,] and then grabbed [her] arm to prevent [her] from walking away." *Id.*  She filed a "complaint about Mr. Floyd to 24 Hour fitness manager Michael ('Mickey') Martinez, communicating that she "was scared of Mr. Floyd, he made [her] feel very uncomfortable, and [she] wanted him to leave [her] alone." *Id.* (¶ 5).  She states that "[o]n other occasions, Mr. Floyd would work out around [them] and stare at [them]," making her feel that he was "following" and "watching" them. *Id.* (¶ 6).  V.H. declared that this made her "feel very comfortable." *Id.*  Ultimately, she stated: "I have never experienced such uncomfortable interactions with a gym member before Mr. Floyd." *Id.*[3]

Similarly, H.S. stated in her declaration that Mr. Floyd repeatedly "made…attempts to []introduce himself to [her] and try to talk to [her]." Dkt. 96-5 (H.S. Decl. ¶ 4).  One such attempt was the July 18, 2022 incident when H.S. tried to defend her friend V.H. from Mr. Floyd's advances and Mr. Floyd "grabbed" V.H.'s "arm to stop her from leaving." *Id.* (¶ 6).  His conduct left her "very upset and crying." *Id.*  H.S. recounts that "[b]oth of [them] were really upset by this incident, which [they] reported to a 24 Hour Fitness employee." *Id.*

### c. **September 9, 2022**

H.S. describes a second incident, which occurred on September 9, 2022, when H.S. attempted to use "20 pound dumbbells from the rack." Dkt. 96-5 at 2 (¶ 7).  She states that "Mr. Floyd followed [her] and yelled at [her] to not take the dumbbells because he was using them." *Id.*

---

[2] While the incident described in V.H. and H.S.'s declarations may not have occurred on the date of July 18, 2022, the Court refers to the event as the July 18, 2022 incident based on the date of entry in Mr. Floyd's 24H member profile.

[3] H.S.'s declaration corroborates V.H.'s statements.  *See* Dkt. 96-5 (H.S. Decl.).

United States District Court
Northern District of California

She reports that she "never saw Mr. Floyd use the dumbbells" and she "felt like he was just trying to intimidate [her]." *Id.*

H.S. continues, "Mr. Floyd did not observe boundaries and made [her] feel really comfortable." *Id.* (¶ 5).  H.S. testifies that his conduct made her feel "intimidated, harassed, and really uncomfortable." *Id.*  She concludes: "My interactions with Mr. Floyd were so uncomfortable that I never felt safe to walk to my car unless a friend came with me or he had already left the gym." *Id.* (¶ 8).  "[B]ecause of Mr. Floyd," H.S. states that she has "started carrying mace and a taser." *Id.*

### d.   September 30, 2022

On September 30, 2022, a member complained that Mr. Floyd waited for her to leave the gym and followed her to her car while she "walk[ed] away from him talking to her."  Dkt. 96-4 at 22 (complaint in Mr. Floyd's member profile pictured below).



| 09/30/2022 08:59 PM PDT | 146643Eric Tapia-Barron | 00488 | N/A | chrome_reader_mode |
| Escalated Issue Member was waiting for a female to leave the gym and proceeded to follow her to car while she walking away from him talking to her. Less | | | | |

*Id.*

When asked about this incident in his deposition, Mr. Floyd testified: "Yes, th[ere] is a possibility that this happened."  Dkt. 96-3 at 72 (Floyd Dep. 125:2-3).  He notes that the complaint "doesn't say that she said for me not to talk to her."  *Id.*  (125:9-10).

### e.   October 1, 2022

On October 1, 2022, "police escorted" Mr. Floyd "out of the gym for trespassing after reports of inappropriate touching from multiple female[s]."  Dkt. 96-4 at 21 (pictured below).



| 10:40 PM PDT | 149765Andrew Pratt | 00488 | N/A | chrome_reader_mode |
| Denied Access: Other police escorted the member out of the gym for trespassing after reports of inappropriate touching from multiple female. case # 2022-56473 Less | | | | |

*Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

**3.    24H's Process for Revoking a Membership**

To revoke an individual's membership, the local 24H gym submits a revocation request to the District Manager for review.  Dkt. 96-4 at 4 (Martinez Decl. ¶ 16).  In his declaration, Michael Martinez, a current 24H employee who worked as the Sales and Service Manager between July 16, 2022 and January 4, 2023, explains:

> If the District Manager approves the request, it is then sent to the Regional Vice President for review.  24 Hour Fitness utilizes a form entitled Member Threaten to Revoke or Revoke Request Form ("Revoke Request"), for managers to insert information about a member[']s inappropriate conduct.  After final approval, the request is then transferred to membership services for processing and notification to the member.

*Id.* at 4-5 (¶ 16).

**4.    24H's Investigation of Allegations, Mr. Floyd's Opportunities to be Heard, and Subsequent Termination of Mr. Floyd's Membership**

As demonstrated above, 24H received complaints regarding Mr. Floyd's conduct across five instances from July 9, 2022 to October 1, 2022.  Dkt. 96-4 at 18 (Ex. C – Mr. Floyd's Member Profile showing other members' complaints regarding Mr. Floyd's conduct).  On July 18, 2022, a 24H employee named Michael Martinez asked Mr. Floyd "to leave and return to speak with [his] General Manager ("GM") Alyese Bryant ("Bryant") the next day."  Dkt. 96-4 at 4 (Martinez Decl. ¶ 12).  After he began to argue with Martinez and refused to leave, Martinez "ultimately had to call the police" to remove Mr. Floyd.  *Id.*

The next day, on July 19, 2022, Mr. Floyd "returned to the gym to speak with GM Bryant about these complaints."  *Id.*  In his deposition, Mr. Floyd confirmed that he "did have an opportunity to speak with managers and provide [his] side of the story."  Dkt. 96-3 at 77 (Floyd Dep. 151:2-5).

Thereafter, nearly two months after the incident, other members filed three more complaints regarding Mr. Floyd's conduct on September 9, 2022, September 30, 2022, and October 1, 2022.  *See* Dkt. 96-4 at 18.  On October 1, 2022, Mr. Floyd "was removed from the gym by police for trespassing due to another allegation of harassment and his membership was suspended."  Dkt. 96-4 at 4 (Martinez Decl. ¶ 15).  On October 3, 2022, Ms. Bryant completed a

revocation request form ("Form") detailing the October 1, 2022 incident and the four preceding incidents. *Id.* at 24 (Ex. D – "Member Threaten to Revoke or Revoke Request Form"). Regarding the October 1, 2022 incident, the Form states, "Michael Floyd approached a female member and grabbed [her] while she was working out, when the member to[ld] Michael to not touch her[,] he responded "I don't care if you don't like it report it." *Id.*

Pursuant to 24H's policies, Mr. Martinez and Ms. Bryant filed requests to revoke Mr. Floyd's membership "due to his history of inappropriate conduct" on September 12, 2022 and October 7, 2022. Dkt. 96-4 at 4 (Martinez Decl. ¶ 17); *see* Ex. D (revocation request and email chain to District Manager regarding revocation requests). On September 19, 2022, 24H's District Manager Kesan Pillai approved the first request. *Id.* at 26 (email from District Manager replying "Approved. Please Process, thank you.").

Through a letter dated October 11, 2022, 24H informed Mr. Floyd "of the termination of his membership." *Id.* (¶ 18); *see* Ex. E (Letter from Membership Services). The letter states:

> It has been brought to our attention that you have displayed behavior that is unwanted and adverse to the interest and wellbeing of 24 Hour Fitness, its employees, its members and its guests. Specifically, you engaged in inappropriate conduct by acting confrontational and displaying improper [and] harassing behavior towards other members while using the facility.

*Id.* Mr. Floyd confirms that he received a physical copy of this letter and notes that the envelope was dated October 17, 2022. Dkt. 120-1 at 1 (Letter Envelope). Further, according to 24H's membership profile for Mr. Floyd, 24H stated: "[I]f member wishes to dispute, [member] may submit in writing and send to corporate off[i]ce address, attn Member [S]ervices." Dkt. 96-4 at 19.

Mr. Floyd confirms that, on October 13, 2022, District Manager Kesan Pillai called him, informed him of the membership termination, and "ask[ed] for [his] side of the story." Dkt. 107-1 at 3 (Mr. Floyd's Statement on the October 1, 2022 Incident). Mr. Floyd states: "After being told the final decision, I told Kesan my side of the story." *Id*; *see* Dkt. 96-3 at 13 (Floyd Dep. 26:21-24).

**B.   <u>Procedural Background</u>**

Based on, *inter alia*, the above allegations, Mr. Floyd has asserted twelve causes of action,

United States District Court
Northern District of California

all based on state law.[4]  The relevant claims at issue in the parties' instant motions for summary judgment are described below.

(1) **Negligent infliction of emotional distress.**  Mr. Floyd alleges that 24H negligently caused him physical and emotional harm because he "relied on 24 Hour Fitness to have fair policies in place when there's a dispute between two patrons" and 24H did not give him information about the claims made against him, demanded that he leave the gym without showering, asked the police to arrest him for trespassing, and refused to allow him to collect his belongings.  SAC at 6–7.

(2) **Breach of contract.**  Mr. Floyd maintains that 24H breached the Parties' contract by failing to properly investigate the allegations made against him and by terminating his membership even though he did not violate any rules.  *See* SAC at 8.

(3) **Breach of the implied duty to perform with reasonable care.**  Mr. Floyd asserts that the Parties' contract required that 24H "properly investigate claims of harassment and any other member-member dispute."  SAC at 8.

(4) **Breach of the implied covenant of good faith and fair dealing.**  Mr. Floyd contends that 24H breached the implied covenant by terminating his membership and not properly investigating allegations against him.  *See* SAC at 9.

(5) **Violation of § 17200.**  Mr. Floyd argues that he was not given fair accommodation as a gym member and further asserts that he was denied a fair harassment policy. *See* SAC at 5; *see also* SAC at 5, 6 (maintaining that 24H violated their contract and that 24H failed to have a "proper harassment policy").

---

[4] In his original complaint, Mr. Floyd had alleged some federal causes of action but he dropped those claims in his FAC and SAC.  In the FAC, Mr. Floyd explains that, even though he is no longer asserting federal claims, the Court still has subject matter jurisdiction because of diversity jurisdiction.  According to Mr. Floyd, at the time he filed the original complaint, he was a resident of Louisiana while 24H is headquartered in California, and thus there was complete diversity.  *See* FAC at 1-2; *see also Rosado v. Wyman*, 397 U.S. 397, 405 n.6 (1970) (stating that it is a "well-settled rule that a federal court does not lose jurisdiction over a diversity action which was well founded at the outset even though one of the parties may later change domicile or the amount recovered falls short of [the minimum amount in controversy]").

Before the Court are both parties' motions for summary judgment. 24H moves on all claims five claims above. Mr. Floyd only moves on the breach of contract, breach of the implied duty to perform with reasonable care, breach of the implied covenant of good faith and fair dealing, and violation of § 17200 claims.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) allows a party to move for summary judgment on all or part of a claim. The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. The Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049-50 (9th Cir. 2014). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Id.*

When the defendant moves for summary judgment on a claim for which the plaintiff bears the ultimate burden of proof, the defendant may prevail by showing the plaintiff's failure "to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case." *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). Conversely, when a plaintiff moves for summary judgment on its own claim, it "must offer evidence sufficient to support a finding upon every element of [its] claim . . ., except those elements admitted . . . by the adversary." *Watts v. United States*, 703 F.2d 346, 347 (9th Cir. 1983). Finally, parties may object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

### IV.    DISCUSSION

**A.    Negligent Infliction of Emotional Distress**

Mr. Floyd brings a claim of negligent infliction of emotional distress against 24H because he alleges 24H "order[ed] the police to place the Plaintiff under citizens arrest for trespassing," "[w]ithout any warning" or "questioning about any dispute." Dkt. 107 at 7 (SAC). Mr. Floyd

continues, "Management never informed the Plaintiff about the harassment accusation, then demanded the Plaintiff leave without showering, requested the [police] officers to arrest the Plaintiff for trespassing, and refused to allow the Plaintiff to collect his belongings." *Id.*

California law does not recognize a separate tort of Negligent Infliction of Emotional Distress ("NIED"). Rather, NIED is simply a form of negligence, and NIED claims must satisfy the traditional elements of duty, breach of duty, causation, and damages. *Burgess v. Superior Court*, 2 Cal.4th 1064, 1073, 9 Cal.Rptr.2d 615, 831 P.2d 1197 (1992); *Lawson v. Management Activities, Inc.*, 69 Cal.App.4th 652, 656, 81 Cal.Rptr.2d 745 (1999); Witkin, 6 Summary of Cal. Law § 838 (2003 Supplement).

### 1.    <u>Duty</u>

#### a.    <u>Legal Standard</u>

Duty is a question of law for a court to decide, *see Kesner v. Superior Court*, 1 Cal. 5th 1132, 1142 (2016), but a court's decision can turn on the underlying facts of the case. *See Bararsani v. HDI Global Ins. Co.*, No. CV 21-3679 PA (SHKx), 2021 U.S. Dist. LEXIS 215951, at *3 (C.D. Cal. Nov. 5, 2021) (indicating that a negligence claim fails if a plaintiff does not allege facts establishing a legal duty). "Whether a particular defendant owes a particular plaintiff a legal duty of care (actionable in a claim for negligence) is, at bottom, a 'question of public policy' – namely, should that plaintiff's interests be entitled to legal protection against the defendant's conduct?" *Shalghoun v. North Los Angeles County Regional Center, Inc.*, 99 Cal. App. 5th 929, 943 (2024).

> [A]nswering that question obligates [a court] to ask two further questions: (1) Does the defendant owe the plaintiff a legal duty of care under traditional principles of tort law, and if so, (2) do the relevant public policy considerations set forth in *Rowland v. Christian* (1968) 69 Cal. 2d 108 nevertheless favor "limiting that duty"?

*Id.* at 944.

With respect to (1), "a person has a legal duty to act reasonably and with due care under the circumstances with respect to their own actions" – *i.e.*, their own affirmative conduct. *Id.* (emphasis omitted). This duty arises from at least California Civil Code § 1714(a), *see id.*, which

United States District Court
Northern District of California

provides in relevant part that "[e]veryone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself." Cal. Civ. Code § 1714(a).

As for (2), "[e]ven if California law provides that a legal duty of care runs between a plaintiff and a defendant, courts have the power and obligation to examine whether considerations of public policy warrant *limiting* that duty." *Id.* at 946 (emphasis added). The existence of a duty may be informed by public policy considerations that warrant limiting that legal duty. *See id.* at 946. Those considerations are known as the *Rowland* factors and fall into two categories.

> The first category examines the foreseeability of the plaintiff's injury. *Rowland* identifies three foreseeability considerations:
>
> (1) [W]hether "the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed";
> (2) [T]he degree of certainty that the plaintiff suffered injury; and
> (3) [T]he closeness of the connection "between the defendant's conduct and the injury suffered."

*Id.*

> The second category:
>
> ask[s] whether "'the social utility of the activity concerned is so great, and avoidance of the injuries so burdensome to society, as to outweigh the compensatory and cost-internalization values of negligence liability.'" In other words, they ask whether recognizing the duty "would deter socially beneficial behavior." [These] countervailing policy considerations are:
>
> (1) [T]he moral blame attaching to the defendant's conduct, which is "typically found when the defendant reaps a financial benefit from the risks it has created";
> (2) [W]hether liability will "'prevent[] future harm,'" which looks to "both the positive and the negative societal consequences of recognizing a tort duty" in terms of how the imposition of liability is likely to play out;
> (3) [T]he "'extent of the burden to the defendant and consequences to the community of imposing a duty…with resulting liability for breach,'" including whether recognizing tort liability "would impose enormous and unprecedented financial burdens" on likely defendants; and
> (4) [T]he availability of insurance.

*Id.* at 947 (spacing added).

"Although" the "foreseeability factors" in the first category are the "most important, foreseeability is not dispositive of the policy analysis and may be outweighed by the second category of *Rowland* factors." *Id.* (internal citations omitted).

**b.   Discussion**

A general presumption exists that 24H owed Mr. Floyd a duty of reasonable care.  *See* Cal. Civ. Code § 1714(a).  Here, Mr. Floyd alleges that he was harmed by 24H's own misconduct in removing him from the gym "without any warning" or "questioning about any dispute."  Dkt. 107 at 7.  "These allegations raise a claim that [24H] violated its obligation 'to exercise due care in [its] own actions so as not to create an unreasonable risk of injury to others.'"  *Kuciemba v. Victory Woodworks, Inc.*, 14 Cal. 5th 993, 1018 (2023) (quoting *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 716 (2001)) (holding that Civil Code § 1714(a) applies where a plaintiff alleges that they were harmed by a defendant's "*own* misconduct" (emphasis in original)).  The risk of harm was foreseeable.

However, in the circumstances here, public policy factors warrant limiting this duty. Specifically, the strong countervailing interest in protecting the safety of other members (*i.e.* preventing future harm) particularly where members are in close physical quarters warrants limiting the presumptive duty of reasonable care in removing an individual repeatedly accused of harassment from the premises.  The urgency of preventing potential harassment of others limits the scope of investigation the gym must undertake before removing the accused harasser. The situation is akin to an employer's duty of reasonable care to take prompt action to prevent harassment in the workplace under Title VII.  *See* Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*).  That is, to assert a defense to vicarious liability in the Title VII context, an employer must demonstrate "(1) that it *exercised reasonable care to prevent and promptly correct any harassing behavior* and (2) that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided."  *Vance v. Ball State Univ.*, 570 U.S. 421, 430 (2013) (emphasis added).  Accordingly, "[e]vidence that an employer "did not monitor the workplace" or "failed to respond to complaints" is "relevant" to a Title VII plaintiff's claim.  *Id.* at 448-49.  Indeed, the U.S. Equal Employment Opportunity Commission's 2024

Enforcement Guidance on Harassment in the Workplace instructs that an "employer must take corrective action that is 'reasonably calculated to prevent further harassment' under the particular circumstances at the time." Enforcement Guidance on Harassment in the Workplace, U.S. Equal Emp. Opportunity Comm'n (Apr. 29, 2024) (citing *Wyninger v. New Venture Gear, Inc*., 361 F.3d 965, 976 (7th Cir. 2004)).[5] *See Dawson v. Entek Int'l*, 630 F.3d 928, 940 (9th Cir. 2011); *see Campbell v. Haw. Dep't of Educ*., 892 F.3d 1005, 1018 (9th Cir. 2018); *Fuller v. City of Oakland*, 47 F.3d 1522, 1529 (9th Cir. 1995). Prompt corrective action may require immediate or swift action that is sufficient to stop and deter further harassment. *See Brooks v. City of San Mateo*, 229 F.3d 917 (9th Cir. 2000) (holding that employer took prompt remedial action by placing the harassing employee on administrative leave pending an investigation one day after the employer was apprised of the incident); *see Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1052 (9th Cir. 2007) (finding that an employer took "prompt actions" by "immediate[ly]" telling the harassing employee "to stay away from" the victim, hiring "outside counsel to investigate and make recommendations," having the victim "report to another individual other than the harassing employee" and "conduct[ing] sexual harassment training" after the victim filed a complaint about the harassing employee); *see also Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991) ("Title VII requires more than a mere request to refrain from discriminatory conduct."). Like an employer's duty of reasonable care to prevent harassment in the workplace under Title VII, public policy factors warrant affording proprietors of establishments where patrons have close physical contact with one another (such as a gym) the ability to take prompt corrective action to prevent patron-on-patron harassment. *Cf. Parratt v. Taylor*, 451 U.S. 527, 540–41 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (rejecting "the proposition that [requiring a hearing] 'at a meaningful time and in a meaningful manner' always requires the State to provide a hearing prior to the initial deprivation of property"). The ability to take prompt corrective action is especially compelling where there are multiple and repeated claims of harassment directed against the alleged offender.

---

[5] *See* https://www.eeoc.gov/laws/guidance/enforcement-guidance-harassment-workplace.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Thus, under the *Rowland* factors, even if it were assumed the foreseeability prong favors

2    imposition of a duty of care towards one in Mr. Floyd's position, *see Kesner v. Superior Ct.*, 1

3    Cal. 5th 1132, 1145 (2016); *Bigbee v. Pac. Tel. & Tel. Co.*, 34 Cal. 3d 49, 57 (1983), the public

4    policy factors limit the duty to investigate before taking corrective action and permits a prompt

5    investigation *after* immediate corrective action is taken.  This conclusion is consistent with various

6    decisions limiting the scope of the duty of care under California tort law, even when harm is

7    foreseeable, where considerations of moral blame, preventing future harm, the burden on the

8    defendant and the broader community, and the availability of insurance warrant doing so.  *See e.g.*

9    *Regents of the University of California v. Superior Court*, 4 Cal.5th 607, 634 (2018) (while a

10   university owes a duty to protect students from foreseeable violence in a classroom environment,

11   public policy considerations warrant limiting the scope of that duty to settings where the

12   university has significant control (such as during curricular activities)).

13   Here, under the kind of circumstances where a business establishment in which members

14   or patrons come in close physical contact, for the reasons described above, there is little moral

15   blame placed on the establishment for taking prompt corrective action in the face of repeated

16   claims of harassment, the interest in prevent future harm is paramount, and the burden on the

17   business which faces potential liability for failing to take prompt corrective action to protect

18   putative victims of harassment are factors that counsel in favor of limiting 24H's duty to conduct

19   an investigation before removing Mr. Floyd, permitting instead a prompt post-facto investigation.

20   Mr. Floyd presents no caselaw to the contrary.

21       2.    **Breach**

22   Next, the issue is whether 24H breached its limited "duty to act with reasonable care under

23   the circumstances" regarding its own actions.  *Regents*, 4 Cal.5th at 619; *see* Cal. Civ. Code, §

24   1714, subd. (a).  It did not.

25   No reasonable jury could find that 24H breached its duty of reasonable care under the

26   circumstances because the undisputed evidence demonstrates that 24H took reasonable steps to

27   respond promptly to the multiple complaints it received from female patrons about Mr. Floyd.

28   Importantly, 24H provided Mr. Floyd with adequate opportunities to respond to members'

allegations shortly after being removed.

As noted above, 24H received complaints regarding Mr. Floyd's conduct across five instances from July 9, 2022 to October 1, 2022. Dkt. 96-4 at 18 (Ex. C – Mr. Floyd's Member Profile showing other members' complaints regarding Mr. Floyd's conduct). After the second incident noted in the July 18, 2022 entry in Mr. Floyd's 24H member profile, a 24H employee named Michael Martinez asked Mr. Floyd "to leave and return to speak with [his] General Manager ("GM") Alyese Bryant ("Bryant") the next day." Dkt. 96-4 at 4 (Martinez Decl. ¶ 12). After he began to argue with Martinez and refused to leave, Martinez "ultimately had to call the police" to remove Mr. Floyd. *Id.* The next day, on July 19, 2022, Mr. Floyd "returned to the gym to speak with GM Bryant about these complaints." When deposed, Mr. Floyd did not dispute these facts. Mr. Floyd testified that he "did have an opportunity to speak with managers and provide [his] side of the story." Dkt. 96-3 at 77 (Floyd Dep. 151:2-5).

Thereafter, less than two months later, additional members filed three more complaints regarding Mr. Floyd's conduct on September 9, 2022, September 30, 2022, and October 1, 2022. *See* Dkt. 96-4 at 18. As a result, on October 1, 2022, Mr. Floyd "was removed from the gym by police for trespassing due to another allegation of harassment and his membership was suspended." Dkt. 96-4 at 4 (Martinez Decl. ¶ 15). On October 3, 2022, Ms. Bryant completed a revocation request form ("Form") detailing the October 1, 2022 incident and the four preceding incidents. *Id.* at 24 (Ex. D – "Member Threaten to Revoke or Revoke Request Form"). Regarding the October 1, 2022 incident, the Form states, "Michael Floyd approached a female member and grabbed [her] while she was working out, when the member to[ld] Michael to not touch her[,] he responded "I don't care if you don't like it report it." *Id.* Pursuant to 24H's policies, Mr. Martinez and Ms. Bryant filed requests to revoke Mr. Floyd's membership "due to his history of inappropriate conduct" on September 12, 2022 and October 7, 2022. Dkt. 96-4 at 4 (Martinez Decl. ¶ 17); *see* Ex. D (revocation request and email chain to District Manager regarding revocation requests). On September 19, 2022, 24H's District Manager Kesan Pillai approved the first request. *Id.* at 26 (email from District Manager replying "Approved. Please Process, thank you."). On October 11, 2022, 24H informed Mr. Floyd "of the termination of his membership."

United States District Court
Northern District of California

1  *Id.* (¶ 18); *see* Ex. E (Letter from Membership Services).  According to 24H's membership profile

2  for Mr. Floyd, 24H stated: "[I]f member wishes to dispute, [member] may submit in writing and

3  send to corporate off[i]ce address, attn Member [S]ervices."  Dkt. 96-4 at 19.  Mr. Floyd confirms

4  that, on October 13, 2022, District Manager Kesan Pillai called him to notify him of the

5  membership termination and asked for his side of the story, which Mr. Floyd states he provided.

6  Dkt. 107-1 at 3 (Mr. Floyd's Statement on October 1, 2022 Incident).

7       As the undisputed evidence demonstrates, 24H took action to remove Mr. Floyd only after

8  receiving multiple complaints.  Both times following his removal, Mr. Floyd was given an

9  opportunity to present his side of the story.  In light of 24H's justification to take immediate

10  corrective action and providing Mr. Floyd with a prompt opportunity to be heard shortly thereafter

11  the actions taken by 24H, fulfilled its limited duty under *Rowland,* and was not, as a matter of law,

12  unreasonable.

13       Thus, based on the undisputed evidence, no reasonable jury could find that 24H's breached

14  its limited duty of reasonable care regarding its own actions in responding to members' complaints

15  and providing Mr. Floyd with prompt opportunities to be heard.  Accordingly, 24H did not, as a

16  matter of law, breach its limited duty of reasonable care under the circumstances.

17       Therefore, summary judgment on Mr. Floyd's NIED claim is **GRANTED** for 24H.

18  **B.    Breach of Contract**

19       "[T]he elements of a cause of action for breach of contract are (1) the existence of the

20  contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4)

21  the resulting damages to plaintiff."  *Oasis West Realty, LLC v. Goldman*, 51 Cal.4th 811, 821

22  (2011).

23       The parties do not dispute the existence of the contract – the parties' membership

24  agreement ("Agreement").  Dkt. 66-3 (Agreement).

25       **1.    Plaintiff's Performance**

26       To establish a breach of contract, a plaintiff must demonstrate their "performance or

27  excuse for nonperformance."  *Goldman*, 51 Cal.4th at 82.  The Agreement clearly requires that

28  members "not engage in any conduct in any 24 Hour facility that…harasses or is bothersome to

15

United States District Court
Northern District of California

members." Dkt. 66-3.

Specifically, the relevant portions of the Agreement recite:

**CONDUCT:** While in 24 Hour facilities, 24 Hour does not permit and will not tolerate any inappropriate conduct. You may not engage in any conduct in any 24 Hour facility that includes, without limitation, using loud, abusive, offensive, insulting, demeaning language, profanity, lewd conduct or any conduct that harasses or is bothersome to members, guests or employees.

**VIOLATION OF POLICIES OR RULES:** If any member or guest violates any of the Policies or Rules, 24 Hour will ask that person to stop or leave. A member's violation of any of the Policies or Rules may also cause 24 Hour, in its sole discretion, to terminate that person's membership and/or other agreements.

*Id.*

With regards to the incidents on July 9, 2022 and September 9, 2022, there is no dispute that Mr. Floyd engaged in conduct that "harass[ed] or…bother[ed]" members, in violation of the Agreement. *Id.* Regarding the July 9, 2022 incident, 24H offered undisputed evidence that multiple "female members…complain[ed] that [Mr. Floyd] ha[d] been harassing [them] during [their] workouts," including a member who complained that he had "touched her mid workout." Dkt. 96-4 at 18. When she told him "please don't touch me," he responded, "when was the last time a man touched you like that." *Id.* Mr. Floyd offers no evidence disputing that he engaged in conduct that harassed her or the other members that day.

Regarding the September 9, 2022 incident involving the 20-pound dumbbells, H.S. testifies that his conduct made her feel "intimidated, harassed, and really uncomfortable." Dkt. 96-5 at 2 (¶ 5). Again, Mr. Floyd failed to offer evidence disputing that he engaged in conduct that harassed or bothered H.S, in violation of the Agreement.

The Court does not rely on the July 18, 2022 incident in finding that Mr. Floyd engaged in conduct that harassed or bothered other members. The Court does note that there is a potential dispute regarding the incident that could be resolved through a finding of a judicial admission. It is true that Mr. Floyd initially disputed the two members' recollection of the incident. Specifically, Mr. Floyd testified that he recalled speaking with Michael Martinez (a 24H manager) in July regarding the two members' complaints. In the deposition, Mr. Floyd states that he "remember[ed] there was a problem that day," but also states that he "hadn't talked to anybody

that day." Dkt. 96-3 at 23-24 (Floyd Dep. 39:11-41:4). Commenting on the members'

declarations in his deposition, Mr. Floyd stated: "I guess I read these declarations before, but it

just seemed like so much BS, I wouldn't put this in my memory." *Id.* at 74 (Floyd Dep. 137:16-

18). On V.S's declaration, Mr. Floyd commented: "It doesn't say I grabbed her arm and pulled

her arm out of the socket. It just says I'm trying to talk to somebody and my conversation was

interrupted." *Id.* (Floyd Dep. 137:24-138:2).

However, Mr. Floyd's argument in his motion papers regarding the July 18, 2022 incident

seems to contradict his testimony that he did not engage with other members. In particular, in his

motion, Mr. Floyd states that "Martinez declares Floyd attempted to speak with [the two

members] on 07/18/22." Dkt. 95 at 15. Then, Mr. Floyd argues that his "[f]ailed attempts at

conversation…are not grounds to substantiate [V.H and H.S.'s] fears." Dkt. 95 at 16. Based on

his argument, it appears that Mr. Floyd admits that he engaged in some kind of conduct that

impacted the two members but refutes that the event occurred on July 18, 2022. Further, he

simply argues that his conduct should not have made the two members feel how they did. Thus, in

his filing, Mr. Floyd does not dispute what happened, but only whether the complainants'

reactions were justified.

Mr. Floyd's characterization in his motion could well constitute a judicial admission. *See*

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 227 (9th Cir. 1988) (holding that "statements

of fact contained in a brief *may* be considered admissions of the party in the discretion of the

district court") (emphasis in original). If so, there is no genuine dispute of fact that he engaged in

conduct "harass[ed] or…bother[ed]" members that day because the two members testified as

much. In particular, V.H stated in her declaration that Mr. Floyd's conduct made her feel "scared"

and "very uncomfortable." Dkt. 96-6 at 2 (¶ 5). Further, H.S. stated in her declaration that his

conduct made her feel "intimidated, harassed, and really uncomfortable." Dkt. 96-5 at 2 (¶ 5).

Mr. Floyd appears to have engaged in conduct that, in the least, "bother[ed]" V.S. and

"harass[ed]" H.S., in violation of the Agreement. Dkt. 66-3.

In any event, in light of the undisputed evidence of Mr. Floyd's conduct which made other

female members feel harassed and intimidated, the Court need not rely on this incident in its

1    analysis below.

2        **2.    Defendant's Breach**

3        In light of the undisputed evidence, the Court concludes that no reasonable jury could find

4   that 24H breached the Agreement by asking Mr. Floyd to leave after he engaged in conduct that

5   bothered or harassed other members for two reasons.  First, 24H's performance of the Agreement

6   was excused by Mr. Floyd's prior breach. The Agreement states: "You may not engage in any

7   conduct in any 24 Hour facility that includes…any conduct that harasses or is bothersome to

8   members, guests or employees."  Dkt. 66-3.  The undisputed evidence establishes that Mr. Floyd

9   violated the Agreement by engaging at least on some occasions in conduct that harassed or

10  bothered other members.  Accordingly, Mr. Floyd's breach excused 24H's performance.

11       Second, Mr. Floyd fails to establish that 24H breached any term of the membership

12  agreement.  The contract provides 24H with the right to terminate an individual's membership if

13  that individual engages in prohibited conduct.  The Agreement provides 24H with the sole

14  discretion to terminate members' memberships or agreements if they violate "any of the Policies

15  or Rules" in the Agreement.  *Id.*    Because Mr. Floyd violated the Agreement by engaging

16  undisputably at least on some occasions in conduct that harassed or bothered other members, 24H

17  did not breach the Agreement by asking him to leave or terminating his membership agreement.

18       Because Mr. Floyd has failed to "offer evidence sufficient to support a finding upon every

19  element of [his] claim," his motion for summary judgment on breach of contract is **DENIED**.

20  *Watts*, 703 F.2d at 347.  Moreover, because 24H has shown that Mr. Floyd failed as a matter of

21  law to establish that he performed the terms of the Agreement thus holding 24H to its performance

22  of the contract, and that 24H breached the membership agreement, 24H's motion for summary

23  judgment on this claim is **GRANTED**.  *Celotex*, 477 U.S. at 322.

24  **C.    Contract-Related Claims**

25       **1.    Breach of Implied Duty of Reasonable Care**

26       Mr. Floyd argues that 24H breached its implied duty to perform with reasonable care by

27  "fail[ing] to use reasonable care in investigating harassment claims against [him] and terminat[ing]

28  his membership."  Dkt. 107 at 8 (SAC).

A California Court of Appeal explains the implied duty of reasonable care as follows:

> 'Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract.' The rule which imposes this duty is of universal application as to all persons who by contract undertake professional or other business engagements requiring the exercise of care, skill and knowledge; the obligation is implied by law and need not be stated in the agreement.

*Holguin v. Dish Network LLC*, 229 Cal. App. 4th 1310, 1324 (2014) (citing *Roscoe Moss Co. v. Jenkins*, 55 Cal.App.2d 369, 376 (1942).

For the same reasons discussed in the analysis of Mr. Floyd's NIED claim, 24H did not breach any implied duty of reasonable care under the circumstances.  Summary judgment on this claim is **GRANTED** for 24H and **DENIED** for Mr. Floyd.

### 2.    Breach of Implied Covenant of Good Faith and Fair Dealing

Mr. Floyd argues that 24H "did not act fairly and in good faith" by "terminat[ing] [his] membership" and "not properly investigat[ing]" the "[a]llegations of harassment." Dkt. 107 at 9 (SAC).

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in original).  Accordingly, the covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Id.  See Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683 (1988) ("The covenant of good faith and fair dealing was developed in the contract arena and is aimed at making effective the agreement's promises").

As the *Careau* court explained:

> [A]llegations which assert such a claim must show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a **failure or refusal to discharge contractual responsibilities**, **prompted** not by an honest mistake, bad judgment or negligence but rather **by a conscious and deliberate act,** which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement. Just what conduct will meet this criteria must be determined on a

United States District Court
Northern District of California

case by case basis and will **depend on the contractual purposes and reasonably justified expectations of the parties.**

*Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) (emphasis added). Thus, Mr. Floyd must demonstrate that 24H consciously and deliberately took action to fail or refuse to discharge its contractual responsibilities, thereby depriving Mr. Floyd of the benefits of the agreement.

Because the Agreement specifically permits 24H to terminate Mr. Floyd's membership agreement if he violates the terms of the contract, and the undisputed evidence establishes that Mr. Floyd violated the contract by engaging in conduct that harassed or bothered other members, 24H had a good faith basis and the contract permitted it to terminate his membership.

To the extent there is a specific implied covenant to reasonably investigate before terminating a member for misconduct, 24H did so here. For the reasons stated above, 24H took reasonable steps to respond to the complaints and provide Mr. Floyd with adequate opportunities to be heard. Nor is there any evidence of bad faith by 24H under the undisputed circumstances of this case where 24H received multiple and repeated complaint s from female members against Mr. Floyd, many of which were not effectively denied by Mr. Floyd.

Therefore, summary judgment is **GRANTED** for 24H and **DENIED** for Mr. Floyd on this claim.

### D.    UCL: Violation of Business and Professions Code § 17200

Section 17200 prohibits unlawful, unfair, and/or fraudulent business acts or practices. Mr. Floyd asserts that 24H violated § 17200 because 24H did not entitle him to "a fair harassment policy." Dkt. 107 at 5 (SAC). Specifically, Mr. Floyd claims that 24H violated § 17200 because 24H did not properly investigate the harassment allegations and provide him with an opportunity to be heard. Dkt. 107 at 5-6 (SAC).

Under the unfairness prong of the UCL, "'a practice may be deemed unfair even if not specifically proscribed by some other law.'" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003) (quoting *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (1999)). In *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247 (2010), the California Court of Appeal articulated three possible tests defining "unfair." First,

the "tethering test" requires that the "'public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions.'" *Id.* at 257, 106 Cal.Rptr.3d 46 (quoting *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1260–61 (2006)). The second test, which has been referred to as the "balancing test", asks whether the alleged business practice is "'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Id.* (quoting *Bardin*, 136 Cal.App.4th at 1260). Finally, the third test incorporates the definition of "unfair" from the Federal Trade Commission Act and requires: (1) that the consumer injury be substantial; (2) that the injury not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury is one that consumers could not have reasonably avoided. *Id.*

Here, Mr. Floyd's motion relies on the second test because he argues that "Defendant's [had an] unscrupulous policy" in removing him without notifying him of the complaints, conducting a reasonable investigation, or "attempt[ing]…conflict resolution between both parties." Dkt. 95 at 9. In its opposition, 24H applies the third test. Both the second and the third tests require weighing the injury against any countervailing utility of the defendant's conduct.

Accordingly, the Court weighs the utility or countervailing benefit of 24H's conduct against the gravity of the alleged harm to Mr. Floyd. Here, the utility of 24H's conduct is significant – 24H has a vested interest in reasonably promptly removing a member repeatedly accused of harassing other members. The Agreement is clear that 24H can terminate an individual's membership if the individual engaged in conduct that harasses or bothers other members. Such is the case here. Further, any harm related to due process to Mr. Floyd is limited because the undisputed evidence shows that 24H did not immediately remove him from the gym or terminate his membership after receiving the first complaint against him. Instead, the evidence demonstrates that 24H only called the police in July and October 2022 to request assistance in removing Mr. Floyd from the gym after Mr. Floyd refused to leave after notifying him of complaints, giving him an opportunity to be heard shortly after the first removal and after 24H

terminated his membership following the October 2022 incident.

Moreover, any harm to Mr. Floyd in not being able to access 24H is afforded little weight. The undisputed evidence establishes that denial of access to 24H is based on his conduct. In asserting the magnitude of harm from being banned from 24H, Mr. Floyd disclosed: "[I]ncidents similar to this have happened at Planet Fitness as well before I was banned from their gyms in the Bay Area." Dkt. 96-3 at 115. That Mr. Floyd has been removed from other gyms for similar incidents, such as Planet Fitness, does not support finding greater harm caused by 24H's termination of Mr. Floyd's membership. If anything, this fact underscores the justifiability of 24H's conduct in responding to multiple members' complaints regarding Mr. Floyd's conduct. Thus, the utility of 24H's conduct outweighs the gravity of the alleged harm to Mr. Floyd.

Thus, under either the second or third prong of Mr. Floyd's UCL § 17200 claim, summary judgment is **GRANTED** for 24H and **DENIED** for Mr. Floyd.

### V.    CONCLUSION

For the aforementioned reasons, summary judgment is **GRANTED** for 24H and **DENIED** for Mr. Floyd. Mr. Floyd's remaining claims include Intentional Infliction of Emotional Distress and Defamation/Slander. The Court set the briefing schedule for Defendant's motion for summary judgment on these remaining claims at Dkt. 122.

**IT IS SO ORDERED**.


Dated: May 23, 2025


_____
EDWARD M. CHEN
United States District Judge